UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON


WILLIAM EDWARD REBROOK, III,

     Petitioner,

v.                          Civil Action No. 2:10-1009
                              (Criminal No. 2:93-00151)

UNITED STATES OF AMERICA,

     Respondent.


MEMORANDUM OPINION AND ORDER


        Pending is a petition for a writ of error coram nobis pursuant to 28 U.S.C. § 1651, filed August 9, 2010, and petitioner's motion to supplement the record ("motion to supplement"), filed February 4, 2014.

        The motion to supplement requests that the record be expanded to include certain documents from the petitioner's direct appeal of the Judgment in his criminal case, consisting of the parties' opening, response, and reply briefs, and the petition for rehearing and suggestion for rehearing en banc.  It is ORDERED that the motion to supplement be, and hereby is, granted.

I.

This action was previously referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to the court of her Proposed Findings and Recommendation ("PF&R") for disposition pursuant to 28 U.S.C. § 636. On January 5, 2012, the magistrate judge filed her PF&R recommending that the petition be denied.  On January 27, 2012, the United States and the petitioner filed objections.

The magistrate judge has comprehensively recited the procedural and substantive posture of the case.  To summarize, on June 17, 1993, the United States filed a two-count indictment charging petitioner in Count One with wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 ("wire fraud charge"), and in Count Two with securities fraud, in violation of 15 U.S.C. §§ 78ff and 78j(b) and 17 U.S.C. § 240.10b-5.  He was convicted on both counts by a general verdict.[1]

As noted in the court of appeals' opinion adjudicating petitioner's direct challenge to his conviction, the wire fraud

_____

[1] Petitioner's conviction and sentence for the Count Two securities fraud was reversed based upon our court of appeals' rejection of the so-called "misappropriation theory."  See <u>United States v. ReBrook</u>, 58 F.3d 961, 970 (4th Cir. 1995).

charge alleged that the scheme to defraud was designed to deprive "the citizen[ry] of [petitioner's] honest and faithful services as the attorney for the Lottery Commission ["honest services theory"], <u>and</u> that he traded on confidential information ["property fraud theory"]." <u>United States v. ReBrook</u>, 58 F.3d 961, 966 (4th Cir. 1995) (emphasis added).

On February 7, 1994, the presiding district judge, Charles H. Haden, II, entered the Judgment sentencing petitioner to a twenty-seven month term of imprisonment running concurrently on each count followed by a two-year term of supervised release, along with payment of the statutory monetary assessment. Petitioner's direct appeal was unsuccessful.

The court has reviewed the matter <u>de novo</u>. The United States' objections are first addressed.

The United States asserts that the magistrate judge erred in finding <u>cause</u> to support petitioner's failure to raise on direct appeal his vagueness challenge respecting his wire fraud conviction as to the honest services prong. In <u>Murray v. Carrier</u>, 477 U.S. 478 (1986), the Supreme Court observed that cause could arise from "a showing that the factual or legal basis for a claim was not reasonably available to counsel ["reasonable availability rule"]. . . ." <u>Id.</u> at 488. The same

day, in <u>Smith v. Murray</u>, 477 U.S. 527 (1986), the Supreme Court gave further guidance concerning what does not serve to invoke the reasonable availability rule:

> Here the record unambiguously reveals that petitioner's counsel objected to the admission of Dr. Pile's testimony at trial and then <u>consciously elected not to pursue that claim before the Supreme Court of Virginia. The basis for that decision was counsel's perception that the claim had little chance of success in the Virginia courts</u>. With the benefit of hindsight, petitioner's counsel in this Court now contends that this perception proved to be incorrect. Even assuming that to be the case, however, <u>a State's subsequent acceptance of an argument deliberately abandoned on direct appeal is irrelevant to the question whether the default should be excused on federal habeas</u>. Indeed, it is the very prospect that a state court "may decide, upon reflection, that the contention is valid" that undergirds the established rule that "perceived futility alone cannot constitute cause," . . . ; for "[a]llowing criminal defendants to deprive the state courts of [the] opportunity" to reconsider previously rejected constitutional claims is fundamentally at odds with the principles of comity that animate <u>Sykes</u> and its progeny.

<u>Smith v. Murray</u>, 477 U.S. 527, 534-35 (1986) (emphasis added) (citation omitted).  The Supreme Court further observed to wit:

> [T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was "available" at all. As petitioner has candidly conceded, various forms of the claim he now advances had been percolating in the lower courts for years at the time of his original appeal.  Moreover, in this very case, an amicus before the Supreme Court of Virginia specifically argued that admission of Dr. Pile's testimony violated petitioner's rights under the Fifth and Sixth Amendments.

<u>Id.</u> at 537 (citation omitted).

4

Our court of appeals has similarly recognized the limits of the reasonable availability rule.  In United States v. Sanders, 247 F.3d 139 (4th Cir. 2001), the movant asserted that the legal basis for his Apprendi claim was not reasonably available to his lawyer when the movant pled guilty in 1997. The court of appeals disagreed:

> Under the Bousley analysis, Sanders simply cannot show cause to explain his failure to raise his Apprendi argument on direct appeal. The Seventh Circuit has recently addressed this precise issue, holding that a petitioner procedurally defaulted his Apprendi claim when he failed to raise it at his trial in 1992. [United States v. ]Smith[,241 F.3d 546 (7th Cir. 2001)] determined that the petitioner's claims were not novel because "the foundation for Apprendi was laid long before 1992. Other defendants had been making Apprendi-like arguments ever since the Sentencing Guidelines came into being, and in McMillan v.. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Court addressed on the merits an argument along similar lines."
>
> Smith further rejected the petitioner's futility argument, which is identical to Sanders' here. The Smith petitioner argued that he showed cause because, prior to Apprendi, the federal circuit courts had held that drug quantity under 21 U.S.C. § 841(b) was a statutory sentencing factor rather than a substantive element of the offense. In light of this contrary precedent, the petitioner claimed that raising his Apprendi claims on direct appeal would have been futile. Applying Bousley, Smith rejected this argument. Instead, the court recognized that "'[c]ause' means some impediment, and [the petitioner] does not contend that any outside force impeded his legal defense."

Id. at 145 (citations omitted).

5

In rejecting Sander's argument and adopting the Seventh Circuit's approach, the court of appeals stated this:

> Adopting petitioner's view of novelty as a cause for procedural default would invite criminal defendants to bypass the preferred procedural avenue of trial and direct appeal in favor of collateral review. Collateral review would come in turn to serve as an all-purposive receptacle for claims which in hindsight appear more promising than they did at the time of trial. <u>Bousley</u> did not intend every change in criminal procedure to become the occasion for reopening a judgment. <u>The germ of Sanders' Apprendi claim had sprouted at the time of his conviction and there is no reason why he could not have raised it then</u>. Although the court may not have been likely to accept Sanders' argument, <u>Sanders plainly had at his disposal the essential legal tools with which to construct his claim</u>. As a result, Sanders has procedurally defaulted his <u>Apprendi</u> claim.

<u>Id.</u> at 145-46 (emphasis added) (citations omitted).

The aforementioned analyses supports the United States' position.  Petitioner raised a vagueness challenge to the honest services theory of the wire fraud charge both pre- and post-trial in the district court.  His reasons for failing to do so on appeal are immaterial.  It is enough that, at the time of filing his appeal, he "had at his disposal the essential legal tools with which to construct his claim" as in <u>Sanders.</u>  Inasmuch as he made the argument in the district court -- twice -- he had the necessary "legal tools" at hand.  He failed to use them on appeal and consequently cannot show cause for his procedural default.  While the analysis in the PF&R is well-

considered and plausible, the United States' objection is well taken in light of <u>Sanders</u> and Supreme Court precedent.

The court next considers petitioner's objections.  He first asserts error in the magistrate judge's conclusion that he <u>procedurally</u> defaulted on a vagueness challenge to the honest services theory supporting his wire fraud conviction. Petitioner contends that the court of appeals' opinion, at footnote 6, gave him "the benefit of the doubt" and concluded that he, like Elton E. Bryan, an individual who was charged with offenses arising out of a somewhat related scheme, and whose direct appeal was decided months earlier, sufficiently raised a species of the vagueness argument, namely, that "a valid conviction under 18 U.S.C. § 1346 . . . requires more than proof of loss of honest services . . . ."  (Objecs. at 2).

Footnote six explicitly provides, in part, as follows respecting the scope of petitioner's argument on direct appeal:

> ReBrook's argument appears to <u>be more narrow than that of Bryan</u>, focusing on the interrelated nature of the securities fraud and wire fraud prosecutions <u>rather than</u> on whether a violation of the wire fraud statute requires the violation of some law or regulation other than the wire fraud statute itself.

<u>Rebrook</u>, 58 F.3d at 967 n.6 (emphasis added).  The court of appeals additionally observed at footnote seven as follows:

> We stress that, <u>from our reading of his brief</u>, ReBrook's appeal concerning the wire fraud count <u>is</u>

> narrow in scope. For example, ReBrook does not
> challenge 18 U.S.C. § 1346, which defines a "scheme or
> artifice to defraud" under the wire fraud statute as
> including the deprivation of "another of the
> intangible rights of government," as being
> unconstitutionally vague. Furthermore, ReBrook does
> not challenge the sufficiency of the evidence to
> support his conviction on the wire fraud charge.

Id. at 967 n.7 (emphasis added) (citation omitted).[2] From these

two footnotes on which petitioner relies in his objections, it

is apparent that the magistrate judge's analysis of the matter

is correct.  The objection is not meritorious.

----

[2]    Nearly two decades removed from the submission of his
opening brief on appeal, petitioner attempts to construe that
filing from long ago to show that he raised the challenge that
the magistrate judge found to have been defaulted.  He concedes,
however, that "the arguments asserted in . . . [his opening]
appellate brief may not have been as compartmentalized as one
would like, given the benefit of hindsight . . . ."  (Objecs. at
6).
       As noted, petitioner seeks to supplement the record with
his opening brief, the United States' response brief, and the
petitioner's reply brief filed during the direct appeal.  The
opening brief, consisting of the copy furnished by petitioner's
counsel on February 4, 2014, is not a part of either the
district or appellate court records for reasons unknown.  The
response and reply briefs, however, are present in the court of
appeals' archives.  The court has thus supplemented the record
with these three briefs as requested by petitioner in order to
facilitate appellate review in the event that it is sought by
either party.
       Assuming the court was authorized, however, to depart
procedurally from the law of the case doctrine and re-
characterize the court of appeals' understanding of arguments
raised by petitioner during his direct appeal, it would have no
occasion to do so from a substantive perspective.  After
reviewing the three aforementioned briefs, the undersigned is in
accord with the panel opinion in the Rebrook direct appeal.  One
searches the direct appellate briefing in vain for a vagueness
challenge to the honest-service prong.

8

Second, petitioner asserts that he has shown prejudice which, combined with the magistrate judge's finding of cause, results in the court having the ability to reach the merits of his challenge to the honest services prong and grant coram nobis relief despite the fact that the vagueness challenge was procedurally defaulted.[3]  His argument is encapsulated in the following excerpt from his objections:

> In Skilling [v. United States, 130 S. Ct. 2896 (2010)], the United States Supreme Court held that honest services wire fraud only applied to bribery and kickback schemes. Accordingly, if Petitioner was convicted of wire fraud solely on the basis of a honest services theory, his conviction must be vacated. This is not in dispute. However, Petitioner's conviction on the wire fraud charge in Count I of the indictment rested on what the United States asserts were alternative theories of guilt -- a scheme to defraud the State of his honest services and a scheme to defraud the State of property. Petitioner disagrees. He was only tried on an honest services wire fraud theory, and that is the only theory that was presented to the jury. Accordingly Petitioner must be granted coram nobis relief.

(Objecs. at 7).

The magistrate judge's analysis on the point appears at pages 79-84 of the PF&R.  The discussion found there respecting the opening statement and closing argument of the United States, the jury instructions, and the order denying petitioner's post-trial motion disclose that petitioner was not,

---

[3] As noted earlier, the court has concluded that cause is not shown.  It will nevertheless address the remainder of petitioner's objections.

as he suggests, "tried [only] on an honest services wire fraud theory . . . ."  (Objecs. at 7).  To the extent any doubt remains on the point, a further observation is warranted.

Petitioner concedes that Count One of the indictment included the alternative honest services and property fraud theories. (Objecs. at 8).  That is significant inasmuch as the court read to the potential jurors, at the outset of the case, the entire indictment, including the alternative theories for the wire fraud alleged in Count One, which are reproduced in the PF&R at page 79.  (Tr. at 9).  While the court did not read the indictment anew during its charge to the jury, it explicitly referenced the indictment as earlier read.  (Tr. at 545).  In view of this, and the foregoing discussion, the court concludes that the objection is not meritorious.  It is apparent that the United States' case included both the honest services and property fraud theories.  As more fully explained by the magistrate judge, both theories rested on the same, sufficient evidentiary basis to support the general verdict as to Count One.

Essentially this same analysis dooms the substance of petitioner's writ request.  Apart from the procedural infirmities identified supra, the evidentiary predicate necessary to convict the petitioner beyond a reasonable doubt

covered both the honest services and property fraud branches found in Count One.  As noted by the court of appeals respecting Count One, "the Government alleged that ReBrook schemed to defraud the citizens of the State of West Virginia of his honest and faithful services as the attorney for the Lottery Commission, <u>and</u> that he traded on confidential information." <u>Rebrook</u>, 58 F.3d at 966, 963 (emphasis added) ("It was the Government's theory at trial that, from a date early in 1992, ReBrook had knowledge of the Governor's undisclosed plans to allow a statewide expansion of the video lottery immediately following the general election.").

It was only by virtue of trading on the confidential information entrusted to him that petitioner transgressed the honest services and property components of section 1343.  In light of <u>Skilling</u>, it was error to submit the honest-services prong of Count One to the jury.  At the same time, the jury also then had under consideration a separate, and entirely valid, property fraud prong also pertaining to Count One respecting the compromised confidential information relating to West Virginia's plans to expand the lottery.  No reasonable jury could have acquitted the petitioner of property fraud for misusing the confidential information entrusted to him but convicted him of honest services fraud for that very scheme.  Put another way,

the two section 1343 branches sprang from a common legal and evidentiary vine.  Beyond a reasonable doubt, the <u>Skilling</u> error was harmless.

Coram nobis is reserved for those extraordinary cases warranting equitable intervention to achieve justice.  An error of the most fundamental sort is absent from this case.  The petitioner cannot demonstrate that the ends of justice will be served by granting the extraordinary relief requested.  The court consequently declines to upset the longstanding conviction under Count One.

Having considered the petitioner's remaining objections to the PF&R, the court concludes that they are not meritorious.  It is, accordingly, ORDERED as follows:

1.   That the magistrate judge's PF&R be, and it hereby is, adopted and incorporated herein except insofar as otherwise stated above respecting the cause analysis;

2.   That this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and any unrepresented parties.

ENTER:  February 11, 2014

John T. Copenhaver, Jr.
United States District Judge